No. A-CV-23-81

COURT OF APPEALS OF THE NAVAJO NATION

September 30, 1983

Jasper MANYGOATS, Appellant,

vs.

GENERAL MOTORS ACCEPTANCE CORP.,
Phoenix, Arizona, Appellee.

Appeal argued October 8, 1982 before Nelson J. McCabe, Chief Justice and Associate Justices Marie F. Neswood and Homer Bluehouse. Opinion by the full court.

Irene Feigenoff Barrow, Esq., of Tuba City, Navajo Nation (Arizona) counsel for Appellant, and Robert Church, Esq., of Tuba City, Navajo Nation (Arizona) and Richard B. Wilks, Esq. of Phoenix, Arizona for the appellees.

THE CASE BEFORE THE COURT

This appeal involves the complexities of interpreting contracts for the sale of vehicles and the application of federal and state consumer protection laws. The facts of the case are quite simple, but the application of the law is not. The briefs and arguments of the counsel for the parties have been most helpful in guiding the decison of this court.

On August 28, 1979 Jasper Manygoats decided to buy a new 1979 Chevrolet eight-cylinder pickup truck from Hanosh Chevrolet Company in Grants, New Mexico. When the purchase was made, Manygoats and Hanosh signed a standard installment sale contract, which was a printed form in which the blank spaces were filled in with a typewriter. The form was commercially printed and it indicates that it was prepared for use in the State of New Mexico. The form specifically indicates that it was intended to disclose information required by the Consumer Credit Protection Act (which is a New Mexico act) and the terms contained on the face of the form are clearly meant to comply with the Federal Truth-in Lending Act.

Manygoats agreed to pay a total of $7,100 for the pickup, including a downpayment of $2,700 in the form of a trade-in and cash, and the balance of $4,400 by means of 36 payments of $171.54 per month.

The transaction was made at Grants, New Mexico by a Navajo citizen residing at Tuba City, Navajo Nation (Arizona), and it is clear from the document that it would be assigned to the General Motors Acceptance Corporation (GMAC) of Albuquerque, New Mexico.

Things went along in accordance with what the parties expected under the contract until May 27, 1980 when GMAC filed suit to repossess the truck (or obtain the balance due) because of a failure of the defendant Manygoats to make his payment for four months in 1980. Manygoats made an answer in which he denied the payments were due and in which he raised a counterclaim. The counterclaim was made under the Federal Truth-in Lending Act, and it claimed damages consisting of a statutory penalty of two times the finance charge under the contract or the limited statutory amount of $1,000. The total contract balance claimed owing the GMAC at the time was $5,489.28.

The counterclaim alleged that there were three violations of the Truth-in Lending Act: (1) That GMAC was attempting to take as a security not only the truck but "equipment, accessories, and other property in the vehicle," and that there was no disclosure in the agreement that such property would be taken; (2) That the agreement did not clearly tell Manygoats that "after acquired property" could be repossessed along with the truck; and (3) That the agreement did not tell the amount of means of calculating default, delinquency or other charges payable as late charges.

General Motors Acceptance Corporation denied that these matters were in violation of the Truth-in-Lending Act in a reply to the counterclaim, and it later amended its reply to allege that the counterclaim was barred by a Federal limitation that Truth-in-Lending actions must be brought within one year of the date of the agreement was signed.

On this point the parties set up very technical arguments of law and interpretations of a federal consumer act, and the arguments before this court have set up a philosophical debate over whether the arguments raised are "lawyers nuance" and "mental gymnastics" in interpreting a complex consumer act. Both sides claim the blessings of common sense in their interpretations. If only the process was so easy.

One factual matter which is not stated in any of the arguments on appeal and one which was not resolved by the trial court is whether or not there were actually any items of "equipment, accessories, and other property in the vehicle" which would be the subject of a repossession order and whether the dispute over what should or should not have been in the contract was academic or a real dispute. This is a fact which may have assisted the Court of Appeals in its interpretation.

After the suit was filed Mr. Manygoats became current in his payments by the end of January, 1981, and GMAC wanted to terminate the case by dismissing it. However Manygoats wished to proceed with his counterclaim for $1,000 against GMAC and moved the court for a summary judgment upon the papers on file.

Extensive and very technical briefs were filed by the parties, and on May 26, 1981 the District Court took action in a judgment granting a summary judgment to GMAC, granting GMAC motion to dismiss its complaint and denying Manygoats' motion for summary judgment. Manygoats' appeal from that judgment is what is before this court.

ISSUES ON APPEAL

The issues before this court involve an interpretation of the Truth-in-Lending Act. They are:

1. Since 15 U.S.C. Sec. 1640(a) requires that an action be brought within one year from the date of the occurence of a violation of the Truth-in-Lending Act (that is, the date of the agreement to buy the pickup in this case), could the counterclaim be brought after August 28, 1980 (one year after the date of the agreement)?

2. When the seller is given the right to take "any equipment or accessories" in a vehicle when it is repossessed, and that right is given in small print on the back of a written agreement, is the Truth-in-Lending Act violated?

3. When a seller can take "any other property in the...... ...vehicle at the time of repossession," and that right is stated in small print on the back side of an agreement, is there a violation of the Truth-in-Lending Act?

4. When state law limits the use of property used on or in a vehicle after it is bought as an item which can be repossessed, must that fact be stated in the agreement?

THE LAW APPLICABLE TO THIS CASE

At the outset it is very important for this court to indicate to the parties and to others what law applies in the Courts of the Navajo Nation in Truth-in-Lending cases. 7 N.T.C. Sec. 204(a) requires us to apply a sliding-scale of laws in civil actions. When a civil action comes before a Navajo court, it must first apply "any laws of the United States that may be applicable," then, if there are none, "any authorized regulations of the Interior Department," then "any ordinances or customs of the Tribe," and, if none of these laws is applicable, then the court must apply the "laws of the state in which the matter in dispute may lie." Id. Since this is an action under the Truth-in-Lending Act, which is an act of the United States, then the Navajo courts will apply that act and its regulations as "laws of the United States that may be applicable," and no other.

While this is a technical point, it is important. This is a situation in which the Navajo courts will make their own independent interpretation of an enactment of the Congress of the United States, guided by the general precidents of the Courts of the United States and States around the country, and we will not be bound by any decision of the State of Arizona, New Mexico or Utah (depending upon where the dispute arises) or a United States District Court for the federal judicial districts in those states. In other words, the Navajo courts have been given the specific authority to make an independent interpretation of federal law in this category of case, and because of that independent authority the Navajo courts are not bound by local federal or state interpretations of the Truth-in-Lending Act. This is an important distinction because this court notes that there are judicial disagreements as to the meaning and application of the Truth-in-Lending Act among the federal courts and the states, and this court is not required to be bound by a particular interpretation of a non-Navajo court in this region. Of course we will follow definitive rulings of the United States Supreme Court in interpreting the act, as well as definitive regulations and rulings of any federal administrative agency which is authorized to interpret and enforce the act (i.e. the Federal Trade Commission), and we will give the interpretations of courts in this region great weight. However this court has been given the power by the Navajo Tribal

Council to reserve to itself its own reasonable and guided interpretation of federal law, and we will exercise that power in an independent fashion.

## THE STATUTES OF LIMITATIONS QUESTION

We first must address the question of whether there has already been a decision of this court which fixes the Navajo interpretation of the Truth-in-Lending Act as to the statute of limitations question. If there has been, we will of course apply the normal rule that the prior decision will be followed.

The only apparent decision of this court on the question is that of Smoak Chevrolet Company v. Barton, 1 Navajo R. 153 (1977). In that case, without any reference to the date of the agreement, the date of the filing of a repossession complaint or the date of the filing of a counterclaim, the Court of Appeals held that the counterclaim in that action was barred by the one year statute of limitations of the Truth-in-Lending Act. Id. at 160.

The other reported Navajo decision is that of A-1 Mobile Homes Inc. v. Becenti, a decision of the Crownpoint District Court. 2 Navajo R. 72 (D. Crownpoint, 1979). In that case the district court interpreted Smoak to be a declaration of the Court of Appeals to bar counterclaims after the one-year period of time. Id. at 77. That decision also held that no counter-claim, whether it is in the nature of a recoupment, setoff or other claim, can be made after the one-year period. Id.

It is not clear what the principle of law set down in Smoak is. It simply did not permit a particular counterclaim in that case and we do not know the complete circumstances under which it was asserted. As was noted in the A-1, there has been a great deal of disagreement among the various jurisdictions on the application of the limitations provision, and indeed a number of courts have permitted counterclaim in the nature of recoupment under the act. There is a difference between a counterclaim, which is made in opposition or deduction from a claim, recoupment, which is a discount from a demand, or setoff, which is an extrinsic or independent claim. See Black's Law Dictionary, pp. 420, 1439, 1538 (Rev. 4th Ed., 1968). We do not find Smoak to be dispositive here because it is not clear what this court held previously, and of course A-1 was a trial court decision which is not binding on this court.

In determining this issue it is proper to keep the history of the act and its interpretation in mind. On March 31, 1980 the United States Congress amended the limitations prevision of the act and provided that consumers can assert claims "as a matter of defense by recoupment or setoff"in "an action to collect the debt which was brought more than one year from the date of occurrence of the violation." P.L. 96-221, Title VI, Sec. 615, 94 Stat. 180; 15 U.S.C. Sec. 1640(e). This statutory amendment was in accord with a number of decisions allowing such claims. See Am.Jur.2d, New Topic Ser., Consumer Protecton Sec. 113.

This action originally was for repossession or the balance of the purchase price, and the defendant made a counterclaim which arose out of the same transaction and out of the obligations of the seller to the buyer. Therefore it was in the nature of a setoff or independent claim as regards repossession, or a recoupment (i.e. to lessen the obligation)

as regards any balance due. Clearly this would fall within the permissible defense allowed under the amendment to the statute.

The Smoak decision did not decide the question of when counter-claims can be brought given the filing of the original claim within the one year period. This is a question of pleading and it is not decided by reference to Arizona law.

In this case the court will rule that the correct interpretation of the Truth-in-Lending Act is that violations of the act may be asserted as a matter of defense. That is all the amendment to the limitations statute permits, and although the amendment did not come into effect until April 1, 1982, it is clearly a statute which is either declaratory of Congress' agreement with prior decisions or is a remedial provision which may be applied retroactively.

The position taken is that defense in the nature of recoupment or setoff are defenses only. 15 U.S.C. Sec. 1640(e) was clearly intended to limit affirmative claims after a one-year period of time, and after that time violations of the act may be asserted only as a matter of defense. In this case the plaintiff sought to withdraw its claim due to the subsequent compliance of the defendant with his agreement under the contract, and the defendant should not be permitted to have more rights than intended under the law.

Therefore we hold that violations of the Truth-in-Lending Act may be asserted after one-year as a matter of defense in actions to collect a debt, and that since the defendant in this case lost the need to defend by use of violations of the act that the dismissal of the action upon motion of the plaintiff operated to cause a dismissal of the defendant's counter-claim as well.

Since this matter has been determined on a question of procedural law the court will not address its views as to the merits of the defendant's claims that the act was violated, but notes that there is probable cause to believe it was.

Therefore the decision of the district court is affirmed for the reasons stated and the reasoning of the district court is overruled.